## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 31 2019, 6:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ana M. Quirk
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Marcus D. Hanyard,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | January 31, 2019<br><br>Court of Appeals Case No.<br>18A-CR-1237<br><br>Appeal from the Delaware Circuit Court<br><br>The Honorable Thomas A. Cannon, Jr., Judge<br><br>Trial Court Cause No.<br>18C05-1703-MR-4 |

**Mathias, Judge.**

[1]     Marcus Hanyard ("Hanyard") was convicted in Delaware Circuit Court of murder, Level 1 felony conspiracy to commit burglary, and Level 4 felony

unlawful possession of a firearm by a serious violent felon. He was ordered to serve an aggregate sixty-one-year term in the Department of Correction. On appeal, Hanyard argues that the State failed to present sufficient evidence to prove that he committed the charged offenses.

We affirm.

## Facts and Procedural History

On February 9, 2017, between 3:00 a.m. and 4:00 a.m., Hunter Hess ("Hess"), Isaiah Davis ("Davis"), and Zack Farmer ("Farmer"), were smoking marijuana at Davis's home in Muncie, Indiana. The three men were in Davis's bedroom, which was situated at the front of the house, when Hess heard a gunshot coming from the doorway of the bedroom. Hess looked up and saw a black man with a handgun in the doorway of the bedroom, but he could not see the man's face clearly. Davis also saw the man in the doorway but did not get a good look at the man's face.

Davis grabbed his gun, which was laying on a table nearby, and shot at the man in the doorway. The man with the gun fled Davis's home. Hess and Davis then discovered that Farmer had been shot in the head, chest and legs. Davis told Hess not to call the police because there were drugs in the house. As Davis began to hide the money and drugs in the house, Hess carried Farmer out to his vehicle so that he could take him to the hospital. A neighbor who heard the gunshots called 911, and law enforcement officers arrived before Hess could

leave to go to the hospital. Shortly thereafter, Farmer was pronounced dead at the scene.

[5]     Davis was a known drug dealer in the Muncie area. Davis and Matt Fisher ("Fisher") purchased drugs from each other. On some date prior to February 9, 2017, Fisher, Hanyard, and three other individuals discussed robbing Davis. Fisher stated that he would find out whether Davis had drugs in his possession on the date of the planned robbery. Tr. Vol. III, p. 66. Fisher also agreed to give Hanyard information about where the drugs would be located inside Davis's home and how many people were in the home. *Id.* at 69. Fisher knew that Davis kept his drugs and money in one of the front rooms of the house and that Davis had a safe.

[6]     Davis and Fisher exchanged text messages on February 8, 2017 at approximately 9:40 p.m. because Davis wanted to buy pain killers from Fisher. Fisher confirmed that Davis had a significant amount of marijuana and Xanax. Fisher then told Hanyard that Davis had drugs at his house. Hanyard responded by saying, "we should hit the lick," meaning that they should rob Davis. *Id.* at 76.

[7]     The next day, Fisher learned that Farmer had been killed at Davis's home. Approximately one week later, Hanyard told Fisher that he had been involved in a shootout at Davis's home. *Id.* at 79. Hanyard's leg was grazed by a bullet during the shooting causing a wound that was seen by several individuals, including law enforcement officials, within days of the murder. Hanyard told a

friend that he was wounded in a robbery that went wrong. Ex. Vol., State's Ex. 284. And Hanyard's cell phone records established that he was near Davis's home within minutes of the shooting on February 9, 2017.

[8] Hanyard was arrested on February 19, 2017, at a friend's home in Indianapolis. The arresting officers noted the wound on his leg, and he was transported to Ball Memorial Hospital. The emergency room doctor concluded that the wound was a graze wound from a gunshot. The officers who searched the home in Indianapolis found a handgun between the mattress and box springs of the bed Hanyard used while he was staying in the home.

[9] The State charged Hanyard with murder, Level 1 felony conspiracy to commit burglary, Level 2 felony attempted robbery, and Level 4 felony unlawful possession of a firearm by a serious violent felon. A jury trial commenced on February 27, 2018. Hanyard was found guilty of murder, Level 1 felony burglary, and Level 2 felony attempted armed robbery. In a bifurcated proceeding, Hanyard was also found guilty of Level 4 felony possession of a firearm by a serious violent felon. Prior to sentencing, the trial court merged the robbery count with the murder count. Hanyard was then ordered to serve an aggregate sixty-one-year term executed in the Department of Correction. Hanyard now appeals.

## Standard of Review

[10] Hanyard argues that the State failed to present sufficient evidence to prove that he committed murder, Level 1 felony conspiracy to commit burglary, and Level

4 felony unlawful possession of a firearm by a serious violent felon. When we review a challenge to the sufficiency of evidence, "we do not reweigh the evidence or judge the credibility of the witnesses, and we respect a fact-finder's exclusive province to weigh conflicting evidence." *Phipps v. State*, 90 N.E.3d 1190, 1195 (Ind. 2018) (quotation marks omitted). We consider only the probative evidence and the reasonable inferences that support the verdict. *Id*. We will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id*.

## Discussion and Decision

[11] The State lacked direct evidence that Hanyard committed the challenged offenses. Neither Davis nor Hess got a good look at the face of the man who shot Farmer. But "[a] conviction may be based on circumstantial evidence alone so long as there are reasonable inferences enabling the factfinder to find the defendant guilty beyond a reasonable doubt." *Lawrence v. State*, 959 N.E.2d 385, 388 (Ind. Ct. App. 2012) (citation omitted), *trans. denied*.

[12] The State presented evidence that on multiple occasions prior to February 9, 2017, Hanyard, Fisher, and three other individuals discussed robbing Davis. Fisher knew that Hanyard carried a semi-automatic, .40 caliber pistol. Fisher told Hanyard where Davis would likely keep his "stash" and described the layout of Davis's house. Tr. Vol. III., pp. 69–70. On the date of the planned robbery, Fisher told Hanyard that he would find out whether Davis had drugs

in his possession. Hanyard frequently pressured Fisher for information about whether Davis had money and drugs at his home. *Id*. at 70.

[13]  Approximately one week before Farmer was murdered, Fisher gave Hanyard Davis's address. Hanyard's cell phone contained screenshots of a map locating Davis's address. The screenshots were downloaded three days before the murder. Throughout the evening of February 8, 2017, Fisher communicated with Davis for the purpose of discovering whether Davis had drugs in his house. When Fisher contacted Hanyard to tell him that Davis had drugs in his possession, Hanyard responded, "we should hit the lick," i.e. commit a robbery. *Id.* at 76.

[14]  On February 9, 2017, shortly before 4:00 a.m. a black man holding a gun appeared in the doorway of Davis's bedroom at Davis's home. After hearing a gunshot, Davis grabbed his handgun and shot at the man in the doorway. Farmer, who had been sitting in a chair near the door, was shot multiple times and died as a result of his gunshot wounds. At 4:04 a.m. on February 9, 2017, Hanyard called his girlfriend, and during the call he was located a few blocks west of Davis's home. Tr. Vol. II. pp. 206–07; Ex. Vol., State's Ex. 271.

[15]  The day of the murder, Hanyard's friend saw a graze wound on Hanyard's leg. Based on their conversation, Hanyard's friend concluded that Hanyard was involved in a robbery. Approximately one week after the robbery, Hanyard told Fisher that he had been involved in a "shootout" at Davis's home. Tr. Vol. III,

p. 79. Hanyard specifically stated that someone in Davis's house pointed a gun at him so he returned fire. *Id*. at 80.

[16] On February 19, 2017, Hanyard was arrested. On that date he had bandages wrapped around his lower leg. The emergency room physician determined that the wound was a graze from a gunshot. The police searched the home where Hanyard was found and discovered a box of Smith and Wesson federal premium .40 caliber ammunition. Shell casings recovered from Davis's home were .40 caliber with "Federal Forty Smith and Wesson" scored on the bottom. Tr. Vol. II, pp. 17, 20, 22.

[17] This evidence is sufficient to prove beyond a reasonable doubt that Hanyard conspired with Fisher and three other individuals to burglarize Davis's home, and in the course of the burglary, Farmer was shot multiple times, which resulted in his death.

[18] The State also presented sufficient evidence to prove that Hanyard possessed a firearm between the dates of February 9, 2017 to February 19, 2017 as charged in the charging information. Fisher's, Davis's, and Hess's testimonies established that Hanyard possessed a handgun when he participated in the burglary at Davis's home on February 9, 2017. In addition, on February 19, 2017, Hanyard was arrested at a home in Indianapolis. Police officers found a .40 caliber Glock 27 handgun between the mattress and box spring of the bed that Hanyard had been using. Officers also found two boxes of ammunition on a shelf near the bed.

# Conclusion

[19] The State presented sufficient evidence to prove beyond a reasonable doubt that Hanyard committed murder, Level 1 felony conspiracy to commit burglary, and Level 4 felony unlawful possession of a firearm by a serious violent felon. Hanyard's argument to the contrary is merely a request to reweigh the evidence and the credibility of the witnesses, which our court will not do. *See Phipps*, 90 N.E.3d at 1195.

[20] Affirmed.

Bailey, J., and Bradford, J., concur.